Good morning, Your Honors. Thank you for considering the appeal. And if you'd like me to just summarize the pleadings, I'm sure you've read them all, and I could summarize the main points, if you'd like. Would you give us your argument, please? Pardon me? We'd like to hear your argument, please. Okay. Well, number one, the question about jurisdiction. One of the major issues is whether or not the bankruptcy court has jurisdiction over 15 U.S.C. 1641G and other claims in the adversary proceeding. Under Stern v. Marshall, which is 131 Supreme Court 2594, decided in 2011, the Supreme Court's declaration was that a portion of the federal judicial code addressing the bankruptcy court's core jurisdiction is unconstitutional. The guidance under this decision questions the jurisdiction of the bankruptcy court for several of the appellant's claims because they're not part of the core proceeding. Neither the bankruptcy court nor BAP addressed the question. I mean, it's jurisdictional, so that wouldn't matter, but they didn't, did they? No, I'm just trying to orient myself. Right. And I don't have any view. Right. I would say a couple sentences about whether Stern applies, but the other side hasn't argued that it does. I will ask them, but. Okay. The second point, which is much more important, is Mr. Davies, the appellant, claims that the bankruptcy court abused its discretion by ignoring Judge Donovan's previous findings of fact and conclusions of law. The appellee had made several, not just one, but they had made two motions for relief of stay. And Judge Donovan, a judge of 20 years' experience, had looked at these motions for relief of stay and had made a determination that they lacked credibility, that there was not sufficient. I thought that involved One West. Did it involve Deutsche Bank? Okay. Well, the claim is that One West is the agent for Deutsche Bank. If you want a little bit of history, basically the loan was taken out by Indymac. You know, Mr. Davies got the loan from Indymac. Indymac went bankrupt, was taken over by the FDIC. FDIC sold the assets of Indymac Bank, which had banking assets, they had notes, and then they had servicing rights. And the only thing that was purchased by One West was the servicing rights because the note itself had been transferred to some other entity, presumably Deutsche Bank as trustee of a pooling and servicing agreement. So when we talk about One West, we're talking about that entity, that bank that purchased the servicing rights from the FDIC when Indymac went bankrupt. Okay. That's my point, that those prior proceedings involving Judge Donovan, was it you said? Yes. Involved this different entity. We now have the entity that purports to hold the deed of trust, right? So what relevance do the prior findings have to this action? That's what I don't understand. Oh, okay. Whatever rights, the note and the deed of trust were both in the name of Indymac, correct? I mean, that's the fact. I'm looking at an assignment in 2009 in which Deutsche Bank is assigned the deed of trust that they're now trying to use to foreclose on your client's home. That seems to me it's recorded in the county recorder's office. It seems to me to give them, under California law, a valid right to proceed with the foreclosure. I'm frankly not quite sure why your client has any ability to resist that now. I'd love to hear what you think is the defect in them being allowed to go forward with the foreclosure. Well, the deed of trust was under the name of One West. Not the one I'm looking at. Is that the third one? It's a document you asked us to take judicial notes. Did he come up? No. No, okay. I just had a quick question. Because I think we're talking about several different documents. There were at least two deed of trusts, I think, or two assignments to Deutsche Bank, but at two different times. Is that not correct? I'm sorry. Are there two different documents assigning to Deutsche Bank, one in 2009 and one in 2010? I believe so. Has there been an explanation for that? No, I know that there were some alterations of the documents. One of them said that he was a married man, and then the document was whited out to my understanding saying he's a single man. And so that in itself was an alteration which we claim made the document itself void of initial because you can't white out an original document. But the grant deed and the deed of trust, my understanding is that they were whited out. They were altered. But the gist of our argument is that this is an unsecured debt. The note and the deed of trust were separated. And they can be under California law, right? No, not under the Uniform Commercial Code. What authority do you have for the proposition that they can't be? I'm looking at a case that was decided in June of last year that says they can. I don't know what case that is. It's at the bank side, this DeBrunner case. You're not familiar with that case? I am not. I've had many illnesses this past six months, and I am not. I've been reading the cases that are in line with the Uniform Commercial Code, and it's just basic law that if one party has a note and the other party has the deed of trust and they're separated, then that is no longer secured debt. And that's true in some states. But in California, at least, according to the DeBrunner court, I grant you it's a court of appeal decision. It's not a California Supreme Court decision. But this case says plain as day that they can't be separated. Well, I think that needs to get appealed because it flies in the face of all other common sense law. The California Supreme Court denied review in that case. It's a final decision now. Yes. What we have in terms of California law, the most recent exposition of it. These are very difficult cases because the way that these whole mortgage-backed securities, these entities, how people like Mr. Davies and myself, as a matter of fact, and many, many other people, when he borrowed money, allegedly, from IndyMac Bank, he thought he was getting a loan from that bank. And unbeknownst to him, within days, IndyMac Bank had transferred the note to who knows who. Can I ask a question? Yes. Is there any California law contrary? You haven't read the DeBrunner case, but is there any California case that says that you do apply Article III of the UCC to a deed of trust, a real estate deed of trust? The cases that are cited in the brief support that. I don't have the brief in front of me right now. If you didn't feel able to argue a case, then you shouldn't have argued it. Well, I'd like to make the points. Go ahead. My point is that the court, I argued the case in front of Judge Clarkson. I'm sorry. And, you know, made the point that when a note and a deed of trust are separated, that no longer is a secured claim. And so the other thing is that there's an error of law that we believe was made by the judge dismissing the adversary proceeding because he claimed that the declaratory relief, which was one of the causes of action in the adversary proceeding, they claimed that it was duplicative. Why does that matter? Well, because he could have and should have gotten a declaratory relief as to this whole issue, and then we wouldn't have to do it. Well, why does it matter? I mean, you had a quiet title action. You had the declaratory relief. If they're duplicatory, then you're going to get any or any. Then if you win, you'll get a quiet title. Oh, okay. What difference does it make? Oh, the reason is because when you have a declaratory relief request, there's no tender requirement. But in this case, the judge … Well, maybe no tender requirement in the other one either. But there is. That's why they dismissed the quiet title action. Yes, but, okay. No. That's why you think it matters? Is that the reason you think it matters? Yes, because the quiet title, they said, you know, they dismissed, they said, oh, you don't need the declaratory relief cause of action. We're not going to rule on that because it's duplicative of the quiet title action. And then they go ahead and dismiss the quiet title action on grounds that there was no tender made when over here the declaratory relief request does not require tender. So the declaratory relief action should have been ruled on in and of itself because he was asking for the court to make a determination about, you know, about this whole area of law. Do you want to reserve time? Yes. Okay, thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Serena Saluja from Mattkins, Leck, Gamble, Mallory, and Natsis on behalf of the Bush Bank National Trust Company. Your Honor, counsel has raised a host of arguments that are not relevant. Is there any stern problem here? Problem? Is there a stern problem? Your Honor, not that I am aware of. Okay, so you're not making an argument. All right, go ahead. Your Honor, counsel has raised a host of arguments that are not relevant to this appeal. And of no factual and legal support. Your Honor, the uncontested facts are that Mr. Davies took out a loan. He defaulted on that loan in 2009. He hasn't made a payment since 2009. And he's admitted that he doesn't Yes, but if the Deutsche Bank does not have any rights to the deed of trust, then there may be somebody who can foreclose on him, but it isn't Deutsche Bank. Your Honor, the recorded assignments Well, that's a different question. But you first made a bunch of arguments which were accepted by the BAP and the Bankruptcy Court that essentially said that, as I read it, that even if the, in fact, there was something to the claim that Deutsche Bank was not in any position to foreclose, there was essentially no way to litigate that. Because she would have to tender the entire amount of the loan, even though her claim wasn't that she didn't owe the money. The claim was that she didn't owe it to Deutsche Bank. Your Honor Are you still arguing that? Are you still arguing that it had to be a tender? Your Honor, that is an issue for the quiet title claim. As far as the California nonjudicial foreclosure law, the foreclosing party doesn't need to prove or record its authority to start the foreclosure process. All right. So is your position that there is no way to bring an affirmative case when there's a pending foreclosure to determine whether the party that is purporting to foreclose has any right to do so? Your Honor, there may be a way to do that, but Mr. Davies has not done that in the She's brought a quiet title action. She's brought a declaratory judgment action. What's wrong with them, not on the merits, but structurally? What's wrong with them structurally as far as what you If it were true that Deutsche Bank, there was no assignment to Deutsche Bank of any kind, and she comes in and says, Deutsche Bank is trying to foreclose my house, but they don't have any interest in this loan or in the deed of trust or anything else. I want a declaratory judgment that this purported assignment is a fraud or something like that. Your position seems to be she can't do that. Your Honor, she could if her position, if Mr. And that is not the position that she has taken, but if the position was that there was an incorrect trustee, there is California law that suggests that a foreclosure may be void because the incorrect trustee After the fact, after she lost her house? Your Honor, and even before. And what kind of action does she bring for that? Does she have to tender the payment on the loan to do that? Not necessarily. What kind of action does she bring? It's not a quiet title action. What is it? It's not a declaratory judgment action. It's called something else. I'm not sure, Your Honor. Well, isn't that the core of at least two-thirds of this case in terms of what the bankruptcy court and the bank decided before you get to the merits? They largely didn't get to the merits because they largely said she couldn't bring this action. Well, based on the facts and the facts pleaded in the complaint as well as the recorded instrument I did not understand it to be based on the facts. They said essentially that there is no way to bring an affirmative action of this kind and to challenge the identity of the foreclosing entity. Your Honor, I Is that not what they held? Pardon? Is that not so? Am I wrong? Your Honor, I believe so. You think I'm wrong. So why am I wrong? What did they hold? Your Honor, they held that the complaint, the adversary complaint that was filed by Mr. Davies did not state sufficient claims to plead facts for declaratory relief for violation of TILA for quiet title based on the facts pled in the complaint and the recorded instrument. Because there had to be a tender was one of the reasons. Was one of the reasons, Your Honor, yes. But the bankruptcy court did address the other elements for a quiet title claim but found that after hearing Mr. Davies' testimony and that he could not tender nor did he have the money saved up in a separate account. Right. So the reason was failure to tender. That was one of the reasons. What other reason was there? Your Honor, I believe that the bankruptcy court also and we also argued in our briefing that Mr. Davies didn't state a claim on its face to plead a quiet title cause of action. Counsel, can I ask you just to walk us through beginning with the point at which Mr. Davies took out the loan to where we are now in terms of how your client came to possess the right to foreclose on his house? Just walk us through that. Because that's where we've all been struggling to figure that out. Okay. And I'm hoping you can guide us through that. Yes, I can do that. Well, Your Honor, Mr. Davies took out a loan from Universal American Mortgage Company in 2006. The trustee was Universal American Mortgage Company and the nominee beneficiary was MERS. And in 2009, in July 10th of 2009, Mr. Davies defaulted on that loan. And at that point, who held the note and the deed of trust? At that point, it was still, I mean, it was, according to the recorded documents, it was still the original lender and the trustee. So he defaults in 2009 and then takes us forward. Correct. And that notice of default was recorded by Index West as an agent for the beneficiary. In August of 2009, MERS, which was the nominee beneficiary on the original deed of trust, assigned all the beneficial interest in the note and the deed of trust to Deutsche Bank, which is my question. That's the one I was looking at that was filed with the county recorder's office. Correct. And there was a second one also filed? Your Honor, no. I'm not aware of the second one. Pardon? What was that 2010 document? Your Honor, I don't have a 2010 document. Okay. Let's see if I can find it. Go ahead. I'll see if I can find it. Okay. So in 2009, August of 2009, Deutsche Bank gets the beneficial interest in the deed of trust. Where's the note at that point? Who has the note? The note at this point is with, and I don't have the dates before me right now, and I'm happy to submit supplemental briefing on that issue. But the note is with IndyMac Federal Bank. Okay. I mean, IndyMac Bank. And if you can give me a couple minutes, I can just go through my documents to just explain to you. There's a document on Exhibit F, Volume 2, page 189, that says July 2010, and that says that the grandson assigns and transfers to Deutsche Bank as trustee, but by Brian Davis, a single man is trustor. So there is a second one. Who is it assigned from? It's assigned from, let's see, under the pooling and servicing agreement, under the certain deed of trust dated November 16, 2006, executed by Brian Davis, a single man is trustor to Universal American Mortgage Company, and recorded, and this is the one that's signed by Brian Burnett, who the previous judge thought was suspicious because he seemed to be acting on behalf of two different entities. That's all I can talk about. This document that we're talking about here doesn't have a stamp indicating  because that's the main difference between it and the 2009 one. But you're not familiar with this 2010? No. I did a search on the recorded documents, and I have the recorded instruments in front of me. This one was not recorded. It doesn't reflect that it was recorded anywhere, but we have it. I don't know where it came from. If I may take a couple minutes and take a look at it. Usually when you come into the, this is in the record because we have it. If we have it, you have it. If you have it, you should know about it. It doesn't do us any good to have you sit down in the middle of an argument. So let's not do that. Let's just go on. Okay. I have, just to back up for a minute, the Thiele arguments. Yes. My understanding is that she did not waive the right to appeal the Thiele issues. What she waived was the right to amend her complaint on Thiele. Is that correct? Your Honor, it was my understanding at the hearing that the judge, the bankruptcy court judge, asked her whether she would like to waive her right to appeal, waive her right to file an amended complaint. Right.  So she didn't waive her right to appeal the Thiele claim and, in fact, the back did not treat her as having waived that right. They did address the question. They did address it. Okay. So is it your position that the Thiele issue is or isn't before us at this point? Your Honor, the Thiele issue, it is before. I mean, we addressed it in our briefs because the appellant addressed it in their briefs. Your basic argument is that there is a statute of limitations problem? Is that your argument? Correct. That it's time barred. What about her argument that she got hit coming and going, as it were? No declaratory judgment permissible, action permissible because it's duplicate of quiet title, and then the quiet title action fails for want of tender. I mean, if the declaratory judgment had been allowed, would or would not the tender requirement have been part of the DEC action? Well, Your Honor, a declaratory relief action is an equitable claim. That stands on other causes of action as well. Right. And so if the complaint had pled any other valid cause of action, then it is arguable that. With regard to the quiet title and the tender, there are a series of district court cases now in similar circumstances arguing relatively persuasively to me that the tender requirement doesn't apply when you're complaining not about the procedures of the foreclosure, nonjudicial foreclosure, but you're complaining about the question of whether the person who's purporting to foreclose has the authority to foreclose. The theory being that in the first instance, if the procedures are incorrect, you're still going to eventually get foreclosed and you have to be able to pay in order to resist the foreclosure. But in the second instance, you're not necessarily going to get foreclosed and you should be able to litigate that without having to do a tender. And there are three or four district court cases now. What's wrong with that theory? Your Honor, that is not what the issue that Mr. Davies has brought up in his complaint. He even says in his papers that he's not arguing whether or not the Deutsche Bank has the ability to foreclose. He is just saying that he should essentially get free and clear title to his house, notwithstanding any I thought he was arguing that Deutsche Bank does not have the appropriate connection to this deed of trust and underlying note to be able to foreclose. That's his claim. The Deutsche Bank is not a holder in due course. That there are defects in what Deutsche Bank has brought into court or through the non-judicial foreclosure process that preclude its ability to foreclose and give him the right to challenge under the Uniform Commercial Code. Do I misunderstand? Is that the gravamen of at least part of what he's talking about? Your Honor, I would disagree. Okay, that's fine. So tell me. Seriously, I'm not trying to mousetrap you at all. If I misunderstand what's going on, say so. Yes, Your Honor. Mr. Davies is not, as far as I understand, arguing that an entity does not have the ability to foreclose. An entity, but not Deutsche Bank. There may be one out there, but she's saying it isn't Deutsche Bank. Your Honor, that is not what the issue was. Well, what is the issue then? I understand it's hard to understand her. Yeah, frankly, it is. That's the reason I understand your arguments either, to be clear, to be truthful. Okay. So I want to know what is your understanding of her claim about why, what's she trying to acquire a title about? Your Honor, truthfully, I think that when Mr. Davies took out the loan, he took out a loan at the height of the market. And now that the home isn't worth what it's worth. I understand that. But he's making claims. And Judge Donovan did think there was something screwy about these pieces of paper here. Right? Your Honor, the motions for relief from stay are irrelevant to the decision. They're not irrelevant insofar as there's a judge who looked at the documents and said these are peculiar documents. Right, but a motion for relief from stay is not an adjudication on the merits. I mean, we don't know. If you look at the actual motions for relief from stay, the decisions, they're denied without prejudice. And Mr. Davies won on those cases. The stay was not lifted. The foreclosure has not occurred. He is not appealing that decision. He is just appealing. I understand that. But I'm simply observing that at the core of this case, if there is a core of this case, the argument is that there was a chain of transfers and assignments, which resulted in an assertion by Deutsche Bank of rights it doesn't have. No? To put it at its most general level. At the most general level. Okay. Maybe, but they – maybe. All right. Thank you very much. Thank you, Your Honor. Just really briefly, just we're claiming that there was an abuse of discretion and there's errors of law. The Judge Clarkson denied the – or actually granted the motion for judgment on the pleadings and ignored the res judicata, res judicata effect that should have been in place when Judge Donovan made two rulings. Deutsche brought two separate motions for relief of stay and Judge Donovan reviewed them, you know, extensively and he denied them because he said they lacked credibility. It wasn't Deutsche that brought them, was it? Deutsche's agent, which was One West. As I said, like the difficulty with these cases is that there's servicing rights and then there's alleged beneficiaries. And like this Sue Can Murray, who's the one who signed off as the alleged agent for MERS, if you go on the Internet, I mean, she's known, just like Brian Bly and many, many others, they're just – they're paid to do these signatures. They're not real vice presidents. They're not real agents. They, you know, they just rubber stamp these documents. Like down in Texas, they sit in the holding rooms. They're what they call robo-signers. These are not legitimate assignments. These are just, you know, MERS was created to avoid the fees that people were supposed to pay when they did an assignment. You know, normally if you sign a document and you want it recorded, you have to go down to the county recorder's office and you pay your $9 or $12. Well, MERS was created so that the banks didn't have to pay these fees. And they created these, you know, they're alleged beneficiaries and then they've got robo-signers signing these documents. And Mr. Davies and his wife, you know, took that alone. And they don't know – they still to this day don't know who owns the note, who has the deed of trust. There was one filed in 2009. There's one filed in 2010. The 2010 one is not stamp filed. Right. Okay. Well, why was it done? Who cares when there's a 2009 assignment? Okay, there's a 2009. But it's done by Sue Canmurray, who we're claiming to be an alleged – no, we're alleging that she is in fact a robo-signer, that this was not a legitimate assignment. And the assignment going from MERS, a mortgage electronic, you know, service, that doesn't – the transfer of the deed of trust does not show who has the note. Where is the note? What difference does that make in the case of Judge Watford? Because if a note is separated from a deed of trust, there's no security interest. And Mr. Davies went through a Chapter 7 bankruptcy. Unsecured debts are discharged in bankruptcy, as you well know. It's an unsecured – Separated, meaning somebody else holds it. Is that what you mean by that? Yeah. I mean, a note and a deed of trust, like the note evidences the debt, right? And the deed of trust is just a document that secures that note. I mean, who cares what the deed of trust is? If you don't have the underlying note, they're like hand in glove. If I borrow money from you, you know, and, you know, you owe me money, but, you know, Joe Blow tries to collect from you. And you say, well, no, I owe Diane the money. And, like, why would you pay Joe Blow unless they've got the note? Because if I sign the deed of trust, I'm going to also assign the note so that whoever Joe Blow is can go collect from you, can foreclose on your house, can, you know, take you to court and get back that assignment. You know, in other words, that other person, the assignee, has paid consideration presumably, so they would hold the note and the right to enforce the note, which is the deed of trust. But we don't have any evidence that Deutsch has the note. So all they have is a fabricated document by a MERS vice president, Sue Ken Murray, who's known to be a robo-signer, saying that MERS transferred the deed of trust. So what's a deed of trust if they don't have the note? Where is the note? How do they claim to be secured party creditors? How do they – I mean, you made my argument great. They're just not holders in due course. And in all the hearings that we've had, they've never presented evidence that they own the note, that they're holders in due course, that they have a right to foreclose. Are you done? No, I can go on. You have 54 seconds. Okay. I want to just make a point about the abuse of discretion in just ignoring, you know, the findings of Judge Donovan and just going ahead and dismissing these, you know, Mr. Davis's attempt to make a complaint, to get before the court and say, this person does not have a right to foreclose on our home. And without, you know, even like looking at the evidence and the former findings of Judge Donovan, Judge Clarkson just dismissed it, you know, without giving us leave to amend, without looking at the – without findings of fact, conclusions of law. And I totally agree with your point about the fact that tender would not have been necessary in this case because we were not talking about the procedure. It's not just the TILA, the fact that he didn't get notice of the assignment. You know, TILA is still at issue because he never did get notice of the assignment. But besides that, that's a correctable mistake, you know, for which he's owed damages because it's damaged him. But he didn't know about these assignments. But in any event, they violated the TILA law, but again, that was correctable. But what's not correctable is, you know, he did the very best he could, and I did the best I could to frame an argument saying Deutsch does not have a right to foreclose. And so therefore, we did it in quiet title. We did, you know, Your Honor, give us a declaratory relief. Tell us whether or not this entity owns the note that they allegedly have a deed of trust for. They're foreclosing on my home. You know, let them prove it. I mean, it's so simple. Why can't they just come in and say, here's the note? They don't have the note because the note was fractionalized. It was sold on Wall Street as part of a security. It's been pooled into a pooling and servicing agreement that governs this. The notes are gone. They're shredded. And this is what's happened in all these cases. You know, I'm only arguing this one case, but they can't produce the note because the note was sold as a security. And that's the truth of it. They got people to, doctors, lawyers, teachers, to buy these securities, people who were looking for a safe place to put their retirement funds, went to their brokers, and the brokers said, oh, we have something for you. Not only is it going to pay you 5%, 6%, 7% interest, it's backed by California mortgages. So if they don't pay, then all we have to do. Okay, thank you. Thank you both. Thank you so much for your time. Thank you very much for your argument. And we are in recess. The case of Davies v. Georgia National Bank is submitted and we are in recess. Thank you very much.
judges: Carr, Berzon, Watford